**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

UNITED STATES OF AMERICA )
ex rel. MICHAEL J. SHANK, )
)
)
STATE OF ILLINOIS, ex rel )
MICHAEL J. SHANK, )
)
Plaintiffs, ) Civil No. 04-cv-4105-JPG
)
v. )
)
LEWIS ENTERPRISES, INC., an Illinois )
corporation; DAVID M. LEWIS, individually; )
JOE JOE JOHNSON; DANNY JOHNSON; )
ANDY WOODS; and MIKE BROWN, )
)
Defendants. )

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Danny Johnson's ("Danny") Motion to Stay Proceedings (Doc. 37) and defendant Joe Joe Johnson's ("Joe Joe") Motion to Stay Proceedings (Doc. 38). Relator Michael Shank ("Shank") filed a response in opposition to defendants' motions (Doc. 43). Danny and Joe Joe submitted affidavits by their attorney, Evan L. Owens ("Owens"), in support of their respective motions after Shank filed his brief (Docs. 51, 52).

**BACKGROUND**

Shank brought this action under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, in behalf of the State of Illinois and the United States of America, against Lewis Enterprises and several of its former employees (including the Johnsons). Shank, himself a former employee of Lewis Enterprises, claims to have witnessed numerous fraudulent acts by the named defendants. Joe Joe and Danny have submitted virtually identical motions, memoranda in support and affidavits. As

such, the Court will discuss and rule on their motions jointly. The Johnsons request a stay of these proceedings because they are the subject of an ongoing criminal investigation by the United States. Their contentions are supported by the affidavits of their attorney. In these documents, he relates a conversation between himself and Michael Quinley, Assistant U.S. Attorney, where Quinley relayed the United States' intention to indict Danny. As Owens does not represent Joe Joe in the criminal matter, he can only suggest that the United States intends to indict Joe Joe as well. Agent John Border of the Unite States Department of Labor has also interviewed Danny in the course of the United States' criminal investigation into this matter. As a result of their impending indictment, the Johnsons wish to invoke their Fifth Amendment privilege against self-incrimination. As the subject matter of these two cases is the same, and the government has not offered them immunity, they worry their answers to the complaint and responses to discovery requests could be used against them in the impending criminal case. Shank claims their arguments are premature because they have not been indicted.

## ANALYSIS

The parties agree that Fifth Amendment issues may arise if the United States indicts the Johnsons. *See Nat'l Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924, 926 (7th Cir. 1983) ("Though by its terms applicable only in criminal proceedings . . . [the] privilege against self-incrimination has long been held to extend to compelling answers by parties or witnesses in civil litigation[,] 'wherever the answer might tend to subject to criminal responsibility him who gives it.'") (quoting *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924)); *see also LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 398 (7th Cir. 1995). What they do not agree on is the extent to which these concerns are implicated here, as no indictment has been handed down. Though the

Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings when Fifth Amendment concerns arise, *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1202 (Fed. Cir. 1987), courts have discretion to stay the civil action if "the interests of justice seem[] to require such action." *United States v. Kordel*, 397 U.S. 1, 7-8, 12 n.27 (1970). The Johnsons' assertion of the privilege is insufficient, by itself, to justify a stay; it is for the court to determine whether the assertion of the privilege is justified. *Bathalter*, 705 F.2d at 927; *see also United States v. Certain Real Property, Commonly known as 6250 Ledge Road, Egg Harbor, WI*, 943 F.2d 721, 725 (7th Cir. 1991).

The Seventh Circuit has said, "a stay contemplates 'special circumstances' and the need to avoid 'substantial and irreparable prejudice.'" *6250 Ledge Road,* 943 F.2d at 729 (quoting *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983)). Suggestive of a relatively lenient approach to stays based on the Fifth Amendment, that Court has indicated "[i]t is only when there is but a fanciful possibility of prosecution that a claim of Fifth Amendment privilege is not well-taken." *Bathalter*, 705 F.2d at 927 (quoting *In Re Folding Carton Antitrust Litig.*, 609 F.2d 867, 871 (7th Cir. 1979)). However, one may not invoke the privilege generally; "[t]o be privileged . . . to refuse to answer a question, the answer one would give if one did answer it (and answer it truthfully) must have *some* tendency to subject the person being asked the question to criminal liability." *In re High Fructose Syrup Antitrust Litig.*, 295 F.3d 651, 663-64 (7th Cir. 2002). Other Circuits have suggested a seemingly more rigorous approach. For example, the Eighth Circuit has said that a court should not grant a stay because of Fifth Amendment concerns unless a defendant shows that "either that the two proceedings are so interrelated that he cannot protect himself at civil trial by selectively invoking his Fifth Amendment privilege, or that the two trials will so overlap that effective defense

of both is impossible." *Koester v. Am. Republic Invs., Inc.*, 11 F.3d 818, 823 (8th Cir. 1993) (citing *Anglada v. Sprague*, 822 F.2d 1035, 1036-37 (11th Cir. 1987)). The Court's research has not disclosed a Seventh Circuit opinion defining the scope of inquiry under the circumstances presented here. The courts in the Northern District of Illinois, however, have dealt with similar issues in a number of cases and adopted a fact-specific test requiring the balancing of the following factors (or similar variants):

> (1) the extent to which the issues in the criminal and civil matters overlap, and whether the government initiated both proceedings; (2) the posture of the criminal proceedings; (3) the interests of the plaintiffs in proceeding expeditiously with this litigation and the potential prejudice to plaintiffs of a delay; (4) the burden the proceedings may impose on defendants; (5) the convenience of the court in the management of its cases; and (6) the interests of persons not parties to the civil litigation and of the public in pending civil and criminal litigation.

*United States v. All Meat & Poultry Products Stored at Lagrou Cold Storage*, 02-C-5145, 2006 WL 27119, at *2 (N.D. Ill. Jan. 4, 2006); *Federal Trade Comm'n v. Pac. First Benefit, LLC*, 361 F.Supp.2d 751, 755 (N.D. Ill. 2005); *see also Benevolence Intern. Foundation, Inc. v. Ashcroft*, 200 F.Supp.2d 935, 938 (N.D. Ill. 2002). The Johnsons have offered no alternative mode of analysis, and finding the test set forth above both reasonable and appropriate, the Court will proceed in the manner suggested by Shank and utilized in the Northern District.

The key concern here is that if this case is not deferred, it might undermine the Johnsons' Fifth Amendment privilege against self-incrimination. *See, e.g., Securities and Exchange Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980). As previously noted, Shank's primary opposition to the issuance of a stay rests on the fact that the Johnsons have not yet been indicted. As a result, Shank believes their Fifth Amendment concerns are premature. *See Dresser Indus., Inc.*, 628 F.2d at 1376 (finding that Fifth Amendment privilege not implicated pre-indictment). At this

point, it bears noting that none of the cases cited by the Johnsons deal with ongoing investigations – in the cases they cite, the parties had been indicted before asserting their Fifth Amendment privilege. *See Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp.*, 225 F.Supp.2d 263, 264 (E.D.N.Y. 2002); *Lefkowitz v. Turley*, 414 U.S. 70 (1973); *People ex rel. Hartigan v. Kafka & Sons Bldg. & Supply Co.*, 625 N.E.2d 16, 18-19 (Ill. App. Ct. 1st Dist. 1993). Another case cited by the Johnsons is *All Meat Poultry Products*. 2006 WL 27119, at * 1. In the face of unindicted individuals' concerns regarding self-incrimination, that court said, "a defendant's privilege against self-incrimination is a factor favoring a stay only after that defendant has been indicted." *Id*. at *3 (citing *Dresser Indus., Inc.*, 628 F.2d at 1376; *Am. Express*, 225 F.Supp.2d at 264). Because of the prematurity of the Fifth Amendment concerns and the indefinite nature of a stay based on a *pending* indictment, among other reasons, the weight of authority suggests that a stay is generally not appropriate before indictment. *See Pac. First Benefit, LLC*, 361 F.Supp.2d at 755, 756 (finding individual not entitled to stay of discovery when indictment had not been handed down); *see also All Meat & Poultry Products*, 2006 WL 27119, at * 3 ("As for the unindicted individuals who worry that they will be prosecuted in the future, as discussed above, a defendant's privilege against self-incrimination is a factor favoring a stay only after that defendant has been indicted."); *Am. Express*, 225 F.Supp.2d at 265 (noting that the weight of authority in the Second Circuit counsels against a stay where no indictment has issued); *In re Par Pharm., Inc. Sec. Litig.*, 133 F.R.D. 12, 14 (S.D.N.Y 1990) (same); *Fid. Nat'l Title Ins. Co. of New York v. Nat'l Title Res. Corp.*, 980 F.Supp. 1022, 1025 (D. Minn. 1997) (noting that pre-indictment requests for a stay are generally denied). *But see Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir.1986) (finding pre-indictment stay appropriate pending U.S. Attorney's declination to prosecute); *Brock v. Tolkow*, 109 F.R.D. 116,

118-20 (E.D.N.Y.1985) (finding pre-indictment stay appropriate where both the civil and criminal charges arose under ERISA such that the criminal investigation was likely to vindicate the same public interest as the civil suit).

The first factor for the Court's consideration is the extent to which the issues in the criminal and civil matters overlap, and whether the government initiated both proceedings. Of course, the fact that the Johnsons have not been indicted is significant here. Thus, whether the proceedings *will* overlap is a matter of speculation, though it is quite reasonable to assume the fraudulent conduct detailed in the complaint will serve as the basis for criminal prosecution. A significant concern in these cases is that the government might try to take advantage of the broader rules of civil discovery to obtain information for the criminal prosecution. *See, e.g., Dresser Indus., Inc.*, 628 F.2d at 1376; *Afro-Lecon, Inc.*, 820 F.2d at 1203; *Pac. First Benefit, LLC*, 361 F.Supp.2d at 756. This concern is not applicable here because the government did not initiate these proceedings and declined to intervene. Further, there is some authority for the proposition that no Fifth Amendment privilege is implicated pre-indictment. *See Dresser Indus., Inc.*, 628 F.2d at 1376. This factor clearly counsels against a stay.

The second factor guiding this inquiry is the posture of the criminal proceedings. As the authority cited above suggests, that the Johnsons have not been indicted strongly supports Shank's position. The Court must also consider the interests of the plaintiffs in proceeding expeditiously with this litigation and the potential prejudice to plaintiffs of a delay. In the Court's experience, criminal cases involving the sort of fraud alleged in Shank's civil complaint (presumably the fraud serving as the basis for the yet-to-be-issued indictment) take a significant amount of time to reach trial. Given the statutes of limitations potentially applicable here, *see* 18 U.S.C. § 3282 (5 years),

18 U.S.C. § 3293 (10 years), and the tolling effect of a continuing offense such as a conspiracy, *see, e.g., United States v. Butler*, 792 F.2d 1528, 1532 (11th Cir. 1986), Shank believes that a stay entered by this Court would be too indefinite. *See Pac. First Benefit, LLC*, 361 F.Supp.2d at 755. Even without sufficient facts to determine the applicable statute of limitation or the date that statute began to run, Shank's concern about the indefinite nature of a potential stay in this matter is very real. *See id.* Further, though AUSA Quinley indicated that the government intends to indict the Johnsons, he did not give any indication as to when. Even if the grand jury indicted tomorrow, it is not unreasonable to believe that it would take a year or more for the criminal matter to proceed to trial. When this time is added to the time it will take this case to proceed to trial, concerns regarding witness relocation and fading memories are certainly not insignificant. *See Nat'l Title Res. Corp.*, 980 F.Supp. at 1024. Overall, the second and third factors go in favor of Shank as well.

The fourth factor for consideration is the burden the proceedings may impose on defendants. As the Court previously indicated, both parties agree that the Johnsons' participation in this case will probably implicate the Fifth Amendment if they are indicted. However, as numerous courts have recognized, to the extent this interest is implicated pre-indictment, it is relatively weak. *See, e.g., Dresser Indus., Inc.*, 628 F.2d at 1376; *See Pac. First Benefit, LLC*, 361 F.Supp.2d at 755-56. Shank contends that the Johnsons would suffer no undue burden if this case were to proceed to trial. Shank points out that nothing prevents them from "selectively invoking" their Fifth Amendment privileges during the course of these proceedings. *See Nowaczyk v. Matingas*, 146 F.R.D. 169, 177 (N.D. Ill. 1993). More importantly, as Shank points out, it is not unconstitutional to force the Johnsons to choose between the negative inferences drawn from their silence in this case and their Fifth Amendment privilege. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *Harris v. City of Chicago*,

266 F.3d 750, 753 (7th Cir. 2001); *Am. Express*, 225 F.Supp.2d at 265. This is especially so when their indictment in this matter is not certain. This factor counsels slightly in favor of a stay.

The fifth and sixth factor for consideration are the convenience of the Court in the management of its cases and the interests of persons not parties to the civil litigation and of the public in the pending civil and criminal litigation. As Shank points out, the Court has an interest in moving its cases "to an expeditious conclusion." *Nowaczyk v. Matingas*, 146 F.R.D. 169, 175 (N.D. Ill. 1993). Further, if the Court stays this action, that decision could delay the progress of this case for a number of years – even assuming the indictments come down soon. Given the uncertainty as to whether the Johnsons will be indicted, there is a real possibility that this action will be stayed for no reason. Shank also claims the interest of the public will be served; specifically, he claims certain retired coal miners mentioned in the complaint will be made aware of their need to seek additional care because defendants provided them with improper products. Why the hearing aids were not appropriate for these individuals is not clear. Further, it is also not clear how the interests of the witnesses Shank intends to call will be served by denying the stay. According to Shank, their interests will be served by moving forward with this case while the events are fresh in their memories. Why this would benefit any witness other than Shank is not clear. Finally, Shank claims the public interest in general will be served by allowing this case to proceed to trial, for the public at large will be made more aware of the schemes defendants were allegedly conducting. However, it is unclear why the prosecution of the impending criminal prosecution would not adequately serve this interest. Despite the relative weakness of some of Shank's arguments, the final two factors counsel against a stay as well.

There is some authority in favor of granting a pre-indictment stay when both the civil and

criminal cases arise under the same statute or regulatory scheme. *See, e.g., Tolkow*, 109 F.R.D. at 118-20. In that case, the court granted a pre-indictment stay based in part on its finding that both the civil and the contemplated criminal action arose under ERISA. Under the facts of that case, the Court held that the criminal investigation was likely to vindicate the same public interest as the civil suit, and granted the stay. *Id*. Here, the statutory scheme is different. The False Claims Act only provides civil remedies; it does not contain a criminal enforcement provision similar to that at issue in *Tolkow*. *See* 31 U.S.C. § 3729 *et seq*. In the event the United States indicts defendants, it will not be under a criminal subspecies of the False Claims Act; it will likely be under some other federal criminal statute. Thus, this case is plainly distinguishable from a case like *Tolkow*. In any event, *Tolkow* and its ilk are against the weight of authority. *See In re Par Pharmaceutical, Inc. Sec. Litig.*, 133 F.R.D. at 14. After considering the arguments of the parties and factors set forth in *All Meat & Poultry Products*, the Court finds that the equities balance against the granting of the stay. As the fact that defendants have not been indicted has been a key factor in this decision, the Court **DENIES** the motions to stay **WITHOUT PREJUDICE**. Should defendants be indicted, they may again move the Court for a stay of these proceedings.

## CONCLUSION

Defendants' motions to stay (Docs. 37, 38) are **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**

**Dated: April 21, 2006.**

**/s/ J. Phil Gilbert**
**J. PHIL GILBERT**
**U.S. District Judge**